# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**CUNIX AUTOMOTIVE GROUP, LLC,**

    Plaintiff,

-v-　　　　　　　　　　　　　　　　　　　　Case No.: 2:19-cv-3941
　　　　　　　　　　　　　　　　　　　　　**JUDGE GEORGE C. SMITH**
　　　　　　　　　　　　　　　　　　　　　**Magistrate Judge Jolson**

**LARRY DIMMITT CADILLAC, INC.,** *et al.*,

    Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendants Larry Dimmitt Cadillac, Inc., Dew Cadillac, Inc., and Village Motor Sales, Inc.'s Motion to Dismiss or in the Alternative Stay Pending Arbitration and/or in the Alternative Transfer to Proper Venue (Doc. 7). Plaintiff has responded in opposition (Doc. 8) and Defendants have replied (Doc. 9). This Motion is fully briefed and ripe for review. For the reasons that follow, Defendants' Motion is **GRANTED.**

## I.　　BACKGROUND

Plaintiff Cunix Automotive Group, LLC d/b/a Toy Barn ("Plaintiff" or "Cunix") is an Ohio LLC that operates a car dealership in Dublin, Ohio. On June 29, 2019, Plaintiff entered into an agreement to purchase a 2020 McLaren 720S Coupe from Dimmitt Automotive Group in Pinellas Park, Florida for $341,350.50. The vehicle was titled in the name of Larry Dimmitt Cadillac, Inc., but the address on the title was for Dew Cadillac, Inc., a Florida corporation with its principal place of business in Pinellas, Florida. Dimmitt Automotive Group (hereinafter "DAG") is a fictious name owned by Larry Dimmitt Cadillac, Inc. and registered for use by Larry Dimmitt

Cadillac, Inc., which is a Florida Corporation with its principal place of business in Clearwater, Florida. (Doc. 2, Compl. ¶¶ 1–5, 8).

After execution of the purchase contract, DAG arranged for the delivery of the McLaren to Plaintiff's location in Dublin, Ohio. (*Id*. at ¶ 9). On July 16, 2019, Rodney Padgett with DAG sent an email to Miranda Green, an employee of Cunix, agreeing to a $3,000 reduction in the purchase price of the McLaren. The final purchase price of $338,350.50 was confirmed in that email and Mr. Padgett further stated that the funds should be wired to complete the purchase. The routing and account numbers were not provided in that email. (*Id*. at ¶ 11). Matthew Jones with DAG later sent the process for wiring the funds for the final purchase price of the McLaren via email to Miranda Green and Terry Mullins, employees of Cunix. The wiring instructions were detailed in an attached PDF file. (*Id*. at ¶ 12). Later that night, Miranda Green and Terry Mullins received a second email that purported to be from Matthew Jones. This email included an apology for a mistake and included new instructions for the final purchase price of the McLaren. Just like the previous email, the wire transfer instructions were detailed in an attached PDF file but the routing and account numbers were different. (*Id*. at ¶ 13).

On July 17, 2019, Plaintiff wired the funds for the final purchase price of the McLaren pursuant to the wire transfer instructions in the second email. (*Id*. at ¶ 14). On July 23, 2019, DAG contacted Plaintiff to inquire about the status of the wire transfer because it had not received any wired funds. After some discussion, the second email was mentioned and DAG denied having any knowledge of this second email and wiring instructions. After careful review of the second email, the email originated from the email service that Village Motor Sales[1] uses to conduct

---

[1] Village Motor Sales, Inc. is a Florida corporation with its principal place of business in Homosassa, Florida. Village Motor Sales operates a Toyota dealership. It has common ownership with the other two Defendants, but does not use the DAG fictitious name and was not involved in this sale.

business. (*Id*. at ¶¶ 14–17). Since DAG never received the actual payment, it demanded that Plaintiff make payment to them for the purchase price or return the McLaren. DAG would not release the title to the McLaren until payment was received. On September 3, 2019, Plaintiff returned the McLaren back to DAG. Matthew Jones accepted receipt of the vehicle on behalf of DAG. (*Id*. at ¶¶ 17–18).

On September 9, 2019, Plaintiff Cunix initiated this action against Defendants alleging claims for breach of contract, negligent misrepresentation, and fraud. This lawsuit is about who should bear the risk of loss in connection with the hacking of the email servers and the transfer of funds based on the fraudulent email.[2]

Defendants assert that Plaintiff's claims are subject to arbitration.[3] The purchase contract at issue in this case contains the following language related to arbitration, as well as a forum selection clause. This language is found in the lower left section of the one-page Purchase Contract under the heading ACKNOWLEDGEMENTS. It states in pertinent part:

> Dealer and Purchaser agree that for any controversy, claim, suit, demand, counterclaim, cross claim or third party complaint, arising out of, or relating to this Order or the parties' relationship (whether statutory or otherwise and irrespective of whether the Financing Approvals were obtained or whether dealer terminated the Order): (a) the parties agree to submit to a binding arbitration with the American Arbitration Association (and if this Arbitration provision is not enforceable or is challenged, trial by jury is irrevocably waived): (b) Venue and Jurisdiction shall lie exclusively in Pinellas County, Florida;

(Doc. 2-1, Purchase Contract).

---

[2] While the actual sender of that second email with the fraudulent wiring instructions is yet to be determined, Defendants admit at a minimum in their Motion that "Village Motors [sic] e-mail account was also hacked, and the criminal bounced the e-mail [with the fraudulent wiring instructions] off of the Village Motors [sic] domain." (Doc. 7, Defs' Motion at fn. 2).

[3] In their Motion, Defendants also claim that this matter should be dismissed for lack of personal and subject matter jurisdiction under Federal Civil Rules 12(b)(1) and 12(b)(2).

3

## II. STANDARD OF REVIEW

Defendants move to compel arbitration and to dismiss all claims against them. Under the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), a written agreement to arbitrate disputes arising out of a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a party who signed an arbitration contract fails or refuses to arbitrate, the aggrieved party may petition the court for an order directing the parties to proceed in arbitration in accordance with the terms of the agreement. 9 U.S.C. § 4. The Court must then "determine whether the parties agreed to arbitrate the dispute at issue." *Ackison Surveying, LLC v. Focus Fiber Sols., LLC*, No. 2:15-CV-2044, 2016 WL 4208145, at *1 (S.D. Ohio Aug. 10, 2016) (Marbley, J.) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Id.*; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)*; see also Nestle Waters North America, Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007) ("[W]e examine arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration."). However, "[w]hile ambiguities . . . should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (internal citation omitted).

In evaluating motions to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in light most favorable to the non-moving party." *Jones v. U-Haul Co. of Mass. & Ohio Inc.*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014) (Graham, J.). The Court has four tasks:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout*, 228 F.3d at 714.

The requirements set forth in the FAA were "designed to override judicial reluctance to enforce arbitration provisions, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Id*. "When an agreement to arbitrate encompasses claims asserted in court, dismissal is appropriate under Fed. Rule Civ. P. 12(b)(1) for lack of subject matter jurisdiction . . . ." *Deck v. Miami Jacobs Bus. College Co.*, No. 3:12-cv-63, 2013 WL 394875, at *7 (S.D. Ohio Jan. 31, 2013) (Black, J).

### III. DISCUSSION

Defendants have moved to dismiss Plaintiff's claims against them in favor of arbitration. In the alternative, Defendants move to stay pending arbitration. Finally, should the Court not dismiss the case, Defendants seek to transfer this case to the United States District Court for the Middle District of Florida pursuant to the forum selection provision in the contract, which makes Pinellas County, Florida the parties' venue and jurisdiction of choice. Defendants assert that Plaintiff's claims arise out of the Purchase Contract and therefore fall squarely within the arbitration provision contained in that contract. Plaintiff, however, argues that this matter should not be dismissed in favor of arbitration as some of Plaintiff's tort claims are against Defendant Village Motor who is not a party to the Purchase Contract.

Where the parties have executed a contract containing a binding arbitration agreement, as in the instant case, there is a presumption that any dispute between them is arbitrable. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25. Therefore, an "order to arbitrate the particular grievance

5

should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

Plaintiff does not dispute the aforementioned elements that the Court must consider in determining whether this case must be sent to arbitration, including whether the arbitration provision is valid and enforceable. However, Plaintiff opposes arbitration solely based on the fact that Village Motor is not a party to the contract and therefore not subject to arbitration. Plaintiff relies on *NCR Corp. v. Sac-Co., Inc.*, 43 F.3d 1076, 1080 (6th Cir. 1995), in support of its assertion that arbitration cannot be used to determine the rights of entities that are non-parties to the contract that contains the arbitration clause. Plaintiff has argued that its tort claims cannot be resolved without Village Motor's involvement.

However, in *NCR Corp.* and other similar cases, arbitrators were attempting to enforce rulings against both non-parties to the contract and non-parties to the arbitration. The case at bar is distinguishable. Village Motor is not truly an independent party here, it shares the same parent company as the other Defendants. And more importantly, all the Defendants, "including Village Motor, agree to submit the dispute to binding arbitration with the American Arbitration Association, in accordance with the contract." (Doc. 9, Defs.' Reply at 1). Therefore, while Village Motor is not technically a party to the Purchase Contract, it has agreed to participate in the arbitration proceedings. Thus, Village Motor's agreement to participate in arbitration should satisfy Plaintiff.

Further, judicial economy favors litigating all of Plaintiff's claims in a single forum. In the interest of avoiding duplicative litigation in multiple forums, and especially in light of Village Motor agreeing to participate in the arbitration proceedings, the Court finds that all of Plaintiff's claims against all Defendants in this case must be resolved through arbitration.

Having found that all of Plaintiff's claims in this case must be submitted to arbitration, the Court must determine whether Plaintiff's Complaint should be dismissed or the case should be stayed pending arbitration. The FAA directs the Court to stay an action pending arbitration. Section 3 of the FAA expressly provides that, where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court shall stay the action "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. However, the Court also has the ability to dismiss a case when all issues raised in the complaint are arbitrable. *See, e.g.*, *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) (concluding "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable") (citation omitted); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); *Gassner v. Jay Wolfe Toyota*, No. 4:06-CV-1335, 2007 WL 1452240, at *4 (E.D. Mo. May 15, 2007) ("Where all issues in a case must be submitted to arbitration, it serves no purpose to retain jurisdiction and stay an action."). Based on the applicable caselaw, the Court concludes that dismissal of Plaintiff's Complaint is the appropriate remedy because all of Plaintiff's claims are arbitrable. The Court can discern no purpose for retaining jurisdiction and staying the action.

## IV. CONCLUSION

Based on the foregoing, Defendants Larry Dimmitt Cadillac, Inc., Dew Cadillac, Inc., and Village Motor Sales, Inc.'s Motion to Dismiss or in the Alternative Stay Pending Arbitration and/or in the Alternative Transfer to Proper Venue is **GRANTED**.

The Clerk shall remove Document 7 from the Court's pending motions list. This matter shall be closed.

**IT IS SO ORDERED.**

                                                 */s/ George C. Smith*
                                                 **GEORGE C. SMITH, JUDGE**
                                                 **UNITED STATES DISTRICT COURT**